2001 OK CIV APP 148

**Debra J. WEEKLEY, Petitioner,**

v.

**AAON, INC. and The Workers' Compensation Court, Respondents.**

No. 95,631.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 7, 2001.

Rehearing Granted Sept. 7, 2001.

Certiorari Denied Nov. 20, 2001.

Catherine Gatchell Cooper, Tulsa, OK, for Petitioner.

R. Jay McAtee, Kristin Blue Fisher, Tulsa, OK, for Respondents.

**OPINION**

CARL B. JONES, Judge:

¶ 1 Petitioner, Debra J. Weekley (Weekley), brought this workers' compensation ac-

tion after incurring an alleged hearing loss due to the continuous exposure to loud noise while in the employ of Respondent, AAON, Inc. (AAON). AAON denied that any injury occurred arising out of and in the course of Weekley's employment. Weekley began working at AAON in June of 1998 as a temporary employee through an employment agency and was hired permanently in October of 1998 by AAON. Weekley testified that she had noticed a mild hearing loss in her left ear prior to her employment but had never been treated or tested. On October 5, 1998, AAON sent Weekley for a pre-employment exam which included an audiogram. The examiner noted Weekley had a severe hearing loss in her left ear and directed her to see a physician. From June of 1998 until February 10, 1999 and on May 1, 1999, Weekley was exposed to continuous loud noises from drilling, steel cutting, welding and blowers as well as fuses which exploded.

¶ 2 Weekley introduced into evidence the pre-employment evaluation and medical reports from two physicians. The first physician noted Weekley had a profound hearing loss but did not calculate her impairment percentage. The second physician found Weekley had a 75% monaural hearing loss. AAON presented its medical expert's opinion in which Weekley was assessed with a 48.9% impairment. The medical expert concluded that a more likely explanation for Weekley's hearing loss was a congenital condition which had not been previously diagnosed.

¶ 3 The Workers' Compensation Court found that Weekley had sustained an aggravation to a pre-existing monaural hearing loss and found that impairment was 5.7% to the left ear. Weekley seeks review of this order.

■ ¶ 4 Weekley asserts there is no competent medical evidence to support the trial court's finding that Weekley sustained 5.7% monaural hearing loss. When this Court examines a workers' compensation court's factual resolutions, we apply the any-competent-evidence standard. If supported by

competent evidence, the trial court's findings may not be disturbed on appeal. *Matter of Death of Garland,* 1998 OK 72, 968 P.2d 1214, 1216.

■ ¶ 5 Weekley contends the only explanation for the trial court's finding is the trial court evaluated the first audiogram performed on Weekley and calculated a percentage of disability based on that audiogram without any supporting competent expert opinion. We agree. The only impairment percentages presented to the trial court are the 75% and 48.9%. AAON's expert noted that although he believed this hearing loss was present prior to employment, there was no audiogram which predated her employment at the AAON facility. This is consistent with Weekley's testimony that she had neither been tested nor treated for hearing loss prior to her employment. The record is devoid of any medical evidence which sets forth either Weekley's percentage of previous impairment prior to her employment or states Weekley's percentage of impairment as a result of the first audiogram conducted four months after Weekley's employment at the AAON facility. There is no evidence which either assesses a 5.7% impairment percentage or assesses any impairment percentage concerning an aggravation of a preexisting hearing loss. We find the trial court's award is unsupported by any competent evidence. Accordingly, the trial court's order is vacated and remanded for further proceedings consistent with this opinion.

¶ 6 VACATED AND REMANDED.

¶ 7 ADAMS, P.J., dissents with separate opinion; and JOPLIN, J., concurs.

ADAMS, Presiding Judge, Dissenting.

¶ 1 In my opinion the majority has made two crucial errors in its consideration of this case. First, it treats AAON as Claimant's employer from the first date on which Claimant began working at AAON's facility. However, the record contains competent evidence to support the conclusion that Claimant was employed by Norrell Temporary Services [1]

1. The majority refers to this entity as an "employment agency," but there is no evidence in the record suggesting that characterization. Even in

her brief on appeal, Claimant does not argue that she was an employee of AAON prior to October of 1999, describing her employment status as

when she first began work in the facility and did not become employed by AAON until October of 1998, after she had undergone a preemployment physical examination including an audiogram which revealed she had a hearing loss in her left ear. Because of this error, the majority takes the position that there is no evidence in this record establishing the extent of any pre-existing hearing loss.

¶ 2 Claimant may have been working at AAON's facility during the period from July to October, 1998, but the trial court implicitly concluded that she was employed by Norrell during this period. Under those circumstances, AAON would be liable for workers' compensation benefits for injuries sustained during that period only if Norrell failed to provide workers' compensation coverage. *See 85 O.S.Supp.1997 § 11* (B). Claimant presented no evidence to show that to be the case.[2] Therefore, AAON's liability must be limited to injuries sustained during the time Claimant was employed by AAON from October, 1998 until she ceased working at the AAON plant in February of 1999.[3]

¶ 3 Claimant introduced evidence of the results of an audiogram performed October 5, 1998, during her preemployment physical examination. Applying those results to the criteria required by the *Guides to the Evaluation of Permanent Impairment, Fourth Edition,* American Medical Association 1993 (the Guides), as mandated by statute,[4] that audiogram showed a monaural hearing impairment in Claimant's left ear of 28.1%. Claimant introduced evidence of another audiogram performed on March 11, 1999, after

Claimant ceased to be exposed to the noise in AAON's plant. Applying the Guides, that audiogram showed Claimant had a monaural hearing impairment in her left ear of 33.8%. In this area, the Guides provide for no exceptions in the method in which the audiogram results are interpreted, and the level of impairment is determined by performing mandated mathematical calculations with numbers provided by the test results and comparing the result of that calculation with a table contained in the guides which shows the level of impairment attributable to that result.

¶ 4 It is apparent that the trial court applied the procedures mandated by the Guides to the two audiograms, determined the increase in Claimant's hearing loss during *her employment by AAON,* and awarded her benefits based on that increased loss. The majority rejects this approach, apparently because no medical expert "crunched the numbers." In doing so, the majority makes a second crucial error.

¶ 5 I recognize that expert evidence is required where the disability alleged to exist is of such a character as to require skilled and professional persons to determine the cause and extent of that disability. *See Haynes v. Pryor High School,* 1977 OK 1, 566 P.2d 852. In this case, there is expert evidence of the cause of Claimant's hearing impairment and evidence of audiograms performed by medical experts. Moreover, there is even expert evidence, in fact controlling expert evidence, of the level of hearing impairment shown by those audiograms, *i.e.,* the Guides which the Legislature has chosen

being "hired on the premises of AAON, INC. manufacturing plant and work[ing] at her job under the auspices of a temporary service until she was hired permanently in October of 1998 for AAON, INC."

2. In her brief in this review proceeding, Claimant makes no attempt to demonstrate why AAON should be liable for injuries sustained by the employees of a temporary service provided to AAON under a contract between AAON and the temporary service.

3. It is undisputed that Claimant continued working until February 10, 1999, and although technically employed, was not in AAON's facility again except for one day in May of 1999.

4. According to *85 O.S.Supp.1998 § 22* (3), unless some alternative method has been adopted pursuant to other statutory provisions, medical experts may "only evaluate deafness or hearing impairment in accordance with the latest publication of the American Medical Association's 'Guides to the Evaluation of Permanent Impairment' in effect at the time the injury." This section specifically provides that the examining physician "shall not deviate from said guides ... except as may be specifically provided for in the guides." In the absence of any properly adopted alternative method (and none appears to have been so adopted), the guides "shall be the *exclusive basis* for testimony and conclusions with regard to deafness or hearing impairment." (Emphasis added).

as the exclusive basis for evaluation of hearing impairment. Any expert who used the results of the audiograms from October 5, 1998 and March 11, 1999, and concluded that Claimant had a hearing loss in her left ear on those dates at any level other than 28.1% and 33.8%, respectively, could not truthfully say that the evaluation was performed in accordance with the Guides. If the audiograms in evidence are used, there is *no room* for a difference of medical opinion concerning the level of Claimant's hearing loss on those dates.

¶6 When AAON employed Claimant, she already had a 28.1% monaural hearing impairment in her left ear. No expert testimony was required to show that loss was not caused by an injury which arose out of and in the course of her *employment by AAON*. By the same token there was expert evidence that the noise to which Claimant was exposed while she was employed by AAON was a cause of her hearing loss *as it was evaluated after she ceased working for AAON*. Therefore, I must conclude that the record contains competent evidence to support the trial court's conclusion that the conditions of her employment by AAON aggravated her pre-existing hearing loss and its conclusion that the increased loss attributable to her employment by AAON was 5.7%. I respectfully dissent.